IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

NORTH STAR MUTUAL INSURANCE )
COMPANY, )
 )
         **Plaintiff,** )
 )
v. )   Case No. CIV-13-373-RAW
 )
RODDY ROSE, individually and d/b/a )
ROSE HEAT AND AIR, JAMES QUIGLEY )
and MARY QUIGLEY, )
 )
         **Defendants.** )

## ORDER

Before the court is the motion of the plaintiff, North Star Mutual Insurance Company ("North Star") for summary judgment. Plaintiff filed this action seeking a declaratory judgment[1] that is has no duty to defend or indemnify defendant Roddy Rose ("Rose") in a lawsuit brought in state court by the other defendants, James and Mary Quigley ("the Quigleys").[2] The standard for the granting of a summary judgment motion is set forth in Rule 56(a) F.R.Cv.P. The court views the evidence and draws reasonable inferences in the

---

[1]The Declaratory Judgment Act, 28 U.S.C. §2201, *et seq.*, is not an independent grant of jurisdiction. *See Devon Energy Production Co., L.P. v. Mosaic Potash Carlsbad, Inc.,* 693 F.3d 1195, 1202 (10th Cir.2012). Here, the court exercises jurisdiction pursuant to 28 U.S.C. §1332 (diversity jurisdiction) and thus Oklahoma law applies to the interpretation of the policy. *See Houston Gen. Ins. Co. v. Am. Fence Co., Inc.,* 115 F.3d 805, 806 (10th Cir.1997). Additionally, the court has discretion whether to hear claims for declaratory judgment. *See Mid-Continent Cas. Co. v. Village at Deer Creek Homeowners Ass'n, Inc.,* 685 F.3d 977, 980 (10th Cir.2012). In deciding whether to hear this action, the court considered the five factors listed in *State Farm Fire & Cas. Co. v. Mhoon,* 31 F.3d 979, 983 (10th Cir.1994).

[2]The response to the present motion is only on behalf of defendant Rose. The Quigleys were served but have not entered an appearance in the case. Counsel for Rose initially entered an appearance for all defendants (#10), but later withdrew the appearance for the Quigleys. *See* ##16, 21 & 22.

light most favorable to the nonmoving party. *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate 2003*, 715 F.3d 1231, 1237 (10th Cir.2013).

The pertinent standards for insurance policy construction and interpretation under Oklahoma law are set forth in *Canal Ins. Co. v. Montello, Inc.,* 2013 WL6732658 at **3-4 (N.D.Okla.2013). This court will not reiterate those, but will review to specific standards as relevant to this analysis.

The underlying facts are largely undisputed. The Quigleys hired Rose to install an HVAC (heating, ventilation and air conditioning) unit at their home located within Pittsburg County, Oklahoma. The work was performed from January, 2008 until October, 2008. While the work was being performed on the residence, Rose and plaintiff entered into a contract for insurance coverage. The effective dates of the policy were July, 2008 through July, 2009. Beginning in late 2009, the Quigleys began experiencing heating and cooling problems, along with other deficiencies with the unit. Ultimately, the Quigleys sued Rose in the District Court of Pittsburg County [CJ-2012-307] for (1) breach of implied warranty and (2) breach of contract. North Star received notice of a property loss by Rose on January 2, 2013.[3]

Under this CGL (Commercial General Liability Coverage) policy, an "occurrence" is defined as "an accident, including continuous or repeated exposures to substantially the same general harmful conditions." (#32-6, page 44 of 56, ¶13). North Star does not appear

---

[3] Rose does not admit the allegations in the state court lawsuit, but it is undisputed that the allegations have been made.

to dispute that the facts alleged in the Pittsburg County lawsuit satisfy this definition. "Faulty workmanship can constitute an occurrence that triggers coverage under a CGL policy if (1) the property damage was not caused by purposeful neglect or knowingly poor workmanship, and (2) the damage was to non-defective portions of the contractor's or subcontractor's work or to third-party property." *Mt. Hawley Ins. Co. v. Creek Side at Parker Homeowners Assoc., Inc.,* 2013 WL 104795 (D.Colo.2013)(citing *Greystone Construction, Inc. v. National Fire & Marine Ins. Co.,* 661 F.3d 1272, 1286-87 (10th Cir.2011)).

North Star does contend, however, that certain exclusions in the policy preclude coverage.[4] Cited first is exclusion b (contractual liability), which states in pertinent part that "[t]his insurance does not apply to . . . 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages . . .[t]hat the insured would have in the absence of the contract or agreement."

North Star argues that contractual liability exclusions operate to deny liability for "property damage" resulting from breach of contract. Rose disagrees, contending that a claim such as here for breach of implied warranty does not implicate duties under the contract but rather duties implied by law. In defendant's words: "A warranty does not involve the assumption of a liability." (Response [#34] at 8). There appears to be a split of

---

[4]"A basic rule of insurance law provides that the . . . insurer has the burden of showing that a loss falls within an exclusionary clause of the policy." *Pitman v. Blue Cross & Blue Shield of Okla.,* 217 F.3d 1291, 1298 (10th Cir.2000).

3

authority on this issue, and Oklahoma law is not certain. Rose cites *Townsend Ford, Inc. v. Auto-Owners Ins. Co.,* 656 So.2d 360, 364-65 (Ala.1995), in which the Supreme Court of Alabama seemingly held that breach of warranty claims do not fall within the contractual exclusion. This court notes, however, that in *Pennsylvania Nat. Mut. Cas. Ins. Co. v. St. Catherine of Siena Parish,* 2014 WL 1653516 (S.D.Ala.2014), a district court said that *Townsend Ford* only dealt with express warranties and that "under binding Alabama law the breach of contract claim and the implied warranty claim are excluded from coverage under the contractual liability exclusion." *Id.* at *9.[5] Nevertheless, Rose might well have cited *Ingalls Shipbuilding v. Fed. Ins. Co.,* 410 F.3d 214, 222 (5th Cir.2005)("[C]ourts have consistently interpreted the phrase 'liability assumed by the insured under any contract' to apply only to indemnification and hold-harmless agreements, whereby the insured agrees to 'assume' the tort liability of another. This phrase does not refer to the insured's breach of its own contracts.")(footnote omitted).

In Oklahoma, by contrast, the district court in *Boggs v. Great Northern Ins. Co.,* 659 F.Supp.2d 1199 (N.D.Okla.2009) referred to "[t]he basic assumption that general liability policies do not cover damages for breach of contract". *Id.* at 1210. "The phrases 'legally obligated to pay' and 'liability imposed by law' refer only to tort claims and not contract claims." *Id.* (quoting *VBF, Inc. v. Chubb Group of Ins. Companies,* 263 F.3d 1226, 1231

---

[5] *See also Employers Mut. Cas. Co. v. Donnelly,* 300 P.3d 31 (Idaho 2013)(damages awarded to homeowners in underlying dispute concerning construction contract, based on breach of implied warranty of workmanship, sounded in contract, rather than tort and therefore coverage excluded under this type of policy provision).

4

(10th Cir.2001)). This court does not find the reading of the exclusion urged by North Star to necessarily be a natural one.[6] As the Supreme Court of Wisconsin stated in *Am. Fam. Mut. Ins. v. Am. Girl, Inc.,* 673 N.W.2d 65 (Wis.2004), "[t]he term 'assumption' must be interpreted to add something to the phrase 'assumption of liability in a contract or agreement.' Reading the phrase to apply to all liabilities sounding in contract renders the term 'assumption' superfluous." *Id.* at 80-81.[7] Still, the court in *Dobbs* cited Tenth Circuit authority, which is of course binding on this court as well. The court adopts the discussion in *Dobbs* and rules in favor of the plaintiff as to the contractual liability exclusion.[8]

In the interest of thoroughness, the court will address plaintiff's remaining arguments. Next, North Star relies upon exclusion m, which is an "impaired property" exclusion. Such a provision "precludes coverage for property damage to property, other than the insured's work or product, which is not physically damaged and which damage is caused by the insured's faulty work or product." 9A Couch on Insurance, §129:21 (3d ed.)(footnote omitted). An example might be where the alleged faulty workmanship involved a boat engine, and the insured is sued for loss of use of the boat itself. "[T]he exclusion does not

---

[6]"The construction of an insurance policy should be a natural and reasonable one, fairly constructed to effectuate its purposes, and viewed in light of common sense so as not to bring about an absurd result." *Dodson v. St. Paul Fire & Marine Ins. Co.,* 812 P.2d 372, 376 (Okla.2002).

[7]"A contract shall not be interpreted in a manner that leaves words without meaning and renders language superfluous." *Canal Ins. Co. v. Montello, Inc.,* 2013 WL 6732658, *3 (N.D.Okla.2013)(citing *Bituminous Casualty Corp. v. Cowen Constr., Inc.,* 55 P.3d 1030, 1033 n.15 (Okla.2002)).

[8]The *Dobbs* court was addressing GCL policies in general rather than the contractual liability provision, but this court sees no argument that the exclusionary provision somehow expands coverage.

5

apply where there is physical damage to the other property into which the insured's work or product has been incorporated or if the insured's work cannot be repaired or replaced without causing physical injury to the other property." (emphasis added)(footnote omitted).

Here, North Star concedes that "there is a potential for damage to property surrounding the HVAC installation due to removing sub-flooring to reach the ducts in order to rectify the situation. . . . " (Motion at 8). Thus, under the second half of the treatise sentence quoted above, the court finds that exclusion m does not apply. Secondarily, North Star argues that exclusion n would preclude coverage for such a claim. The language provides exclusion for "[d]amages claimed . . . [involving the insured's product, work or impaired property] . . . If such product, work or property is withdrawn or recalled from the market. . . . " As the language makes obvious, "[e]xclusion n protects insurance companies against liability for the costs of recalls." *Harleysville Worcester Ins. Co. v. Paramount Concrete, Inc.,* 2014 WL 1305070, *13 (D.Conn.2014). Replacing a single HVAC unit is not a "recall." Plaintiff's arguments as to exclusion m and exclusion n are both rejected.

The foregoing addresses the exclusions which plaintiff raises in its motion. In defendants' response, however, another exclusion is discussed and is further addressed in plaintiff's reply. Therefore, the court will address it. The policy states that coverage is not provided for "property damage" to "(6) That particular part of any property that must be restored, repaired or replaced because 'your work' was incorrectly performed on it." A further provision, however, sets forth an exception to the exclusion. It states that "Paragraph

6

(6) of this exclusion does not apply to 'property damage' included in the 'products-completed operations hazard.'" (#32-6 at pages 34-35 of 56). Rose notes that yet another provision under exclusion l states that coverage is not provided for "'property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard." *Id.* at page 35 out of 56. Finally, the term "products-completed operations hazard" is defined (in pertinent part) as property damage occurring away from premises the insured owns or rents, and arising out the insured's product or work, except "[w]ork that has not yet been completed or abandoned." *Id.* at page 44 out of 56, ¶16.

Rose argues that the two provisions, seemingly both providing and negating an exception for the "products-completed operations hazard" renders the policy ambiguous. "When an insurance contract is susceptible of two meanings . . . words of inclusion are liberally construed in favor of the insured and words of exclusion strictly construed against the insurer." *Phillips v. Estate of Greenfield,* 859 P.2d 1101, 1104 (Okla.1993). This argument appears to have been rejected in *Auto-Owners Ins. Co. v. Potter,* 105 Fed. Appx. 484 (4th Cir.2004), in which the court noted that "[p]aragraph j excludes from coverage various types of property damage[;] however, it also details situations in which the exclusion does not apply, including products-completed operations." The court continued: "[f]urthermore, other policy exclusions apply *only* to products-completed operations coverage, demonstrating that such coverage is subject to *more*, not fewer exclusions than the general coverage." *Id.* at \*\*6. In any event, the incident involved here would not fit within

the "products-completed operations hazard" as interpreted by the Tenth Circuit in *Advantage Homebuilding, LLC v. Maryland Cas. Co.,* 470 F.3d 1003, 1012 (10th Cir.2006)(coverage for shoddy work excluded). Thus, even if the provisions are ambiguous, it is not a pertinent ambiguity.

Finally, Rose seeks to invoke the doctrine of reasonable expectations. Oklahoma applies this doctrine "'to the construction of ambiguous insurance contracts or to contracts containing exclusions which are masked by technical or obscure language or which are hidden in policy provisions.'" *Tomlinson v. Combined Underwriters Life Ins. Co.,* 708 F.Supp. 2d 1284, 1291 (N.D.Okla.2010)(quoting *Max True Plastering Co. v. U.S. Fidelity and Guar. Co.,* 912 P.2d 861, 863 (Okla.1996)). "'Under this doctrine, if the insurer or its agent creates a reasonable expectation of coverage in the insured which is not supported by policy language, the expectation will prevail over the language of the policy.'" *Id.* "In other words, 'when construing an ambiguity or uncertainty in an insurance policy, the meaning of the language is not what the drafter intended it to mean, but what a reasonable person in the position of the insured would have understood it to mean.'" *Id.* (quoting *Spears v. Shelter Mut. Ins Co.,* 73 P.3d 865, 868 (Okla.2003)). The court is not persuaded the doctrine is applicable to the case at bar. As discussed, some of the policy provisions are not pellucid, but Tenth Circuit authority has resolved the issues pertinent to this case.[9]

---

[9] In a subsidiary argument, Rose argues for coverage under the "Commercial Inland Marine" policy between the parties. Plaintiff asserts this is a separate policy with a limit of $500, which appears to be correct. (*See* #32-6, page 2 of 56). Rose has not demonstrated that this policy provides coverage regarding the HVAC installation, for the reasons stated in plaintiff's reply. (#39 at 1-2).

8

It is the order of the court that the plaintiff's motion for summary judgment (#32) is GRANTED.

**ORDERED THIS 17th DAY OF JUNE, 2014.**

**Dated this 17th day of June, 2014.**

Ronald A. White
United States District Judge
Eastern District of Oklahoma